UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAFAEL TORRES,<br><br>Defendant | CRIMINAL No. 21-cr-10118-IT |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant is charged with conspiracy to possession with intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. § 846 (Count One) and conspiracy to launder money, in violation of 18 U.S.C. §1956(h) (Count Two). The defendant pled guilty to both counts. There is no plea agreement.

The government believes the total offense level is 33, that the defendant's criminal history category is IV, and that his guideline sentencing range ("GSR") is 188 to 235 months. For the reasons stated herein, the government disagrees that the defendant played a minor role in either the drug or money laundering conspiracies and recommends a sentence of 151 months' incarceration.

Defendant's Role in the Offenses of Conviction

The background of the investigation and the roles of the charged co-defendants are detailed in the presentence report ("PSR") and not repeated in full herein. In October 2019, the Drug Enforcement Administration ("DEA") began an investigation into a Mexico-based drug trafficking organization ("DTO") after receiving information from a confidential source that the DTO could supply multi-kilogram quantities of fentanyl to buyers in the United States, including in Massachusetts. The DTO supplied numerous drug cells operating in the United States. Jose

LARIOS was the leader of the California-based cell that coordinated drug shipments to other DTOs operating in the United States, including in Massachusetts. After investigators seized 17 kilograms of fentanyl and 23 kilograms of cocaine, which were all delivered by the same truckdriver who was employed by the DTO, investigators obtained authorization to begin intercepting LARIOS's phone. Investigators intercepted LARIOS's phone for approximately two months in January and February 2020.

Although TORRES was not a leader of either the drug or money laundering conspiracy, his role was not minor nor inconsequential. The interceptions over LARIOS's phone revealed that TORRES worked closely with LARIOS and was trusted by LARIOS to perform tasks that were critical to the success of LARIOS's drug trafficking business. Investigators intercepted numerous calls in which TORRES reported to LARIOS about wire transfers that he was conducting, including the fictitious names he was using to conduct the transfers. These transfers, conducted to launder and repatriate drug proceeds to Mexico, were necessary to ensure that additional drugs would be supplied by the Mexico-based suppliers. Investigators intercepted calls in which LARIOS directed TORRES to go to his home, locate a particular phone (among numerous phones), and to place a call on his behalf using a coded phrase ('Hey I'm Pariente. I'm Pariente of Las Uñas, he told me to call you.' Tell him, 'What's up.' And that's it . . . From Las Uñas . . . 'I'm Pariente of Las Uñas, and he told me to call you regarding the little party.' Just tell him that. He knows what's up."). The fact that a particular phone and a code phrase had to be used clearly indicates this call related to a drug deal. In another call, LARIOS asked TORRES to go to his home, pickup cocaine, and deliver it to him ("The little ball, and if you have another little ball that's good bring it too."). In February 2020, TORRES flew from California to Boston to pick up

$65,000 from a DEA cooperating witness. He also traveled with LARIOS in August 2020 to meet with the cooperating witness to coordinate the delivery of six kilograms of fentanyl.

Investigators intercepted numerous other calls between LARIOS and TORRES in which LARIOS directed TORRES to meet with people or find names to make additional wire transfers.[1] The calls were coded in typical drug trafficking lingo. For example, on January 29, 2020 (call #552), LARIOS asked TORRES "to have them prepare another one while I get there." In a follow up call (call #563), LARIOS asked if TORRES had made it, and TORRES replied he was "doing it right now." That same day (call #555), TORRES and LARIOS discussed whether a wire transfer had been made. TORRES told LARIOS he was going to bring his "girl" because he was told that he could not make a transfer for "a week" because his name was on "the list." On February 18, 2020 (call #1384), LARIOS asked if TORRES was meeting with a person named David, who was bringing TORRES a "set of tires . . . and an invoice for everything." LARIOS told TORRES to take the guy "inside." In a subsequent call (call #1385), LARIOS told TORRES, "Send him inside. Don't let him see the other guy." Investigators know that drugs are often secreted inside tires. If this were simply a call about purchasing tires, it is doubtful that the transaction would have to take place inside and out of view of others. That same day (call #1336), TORRES told LARIOS he had "all the names" and would "go there." This is consistent with TORRES using names of third parties to conduct wire transfers.

TORRES's repeated instances of assisting LARIOS in conducting important duties that promoted the DTO's drug trafficking and money laundering makes him more than a minor participant.

---

[1] All of the calls intercepted between LARIOS and TORRES are attached as Exhibit 1.

A. **Sentencing Factors Under 18 U.S.C. § 3553(a)**

Considering the § 3553(a) factors, a sentence of 151 months is sufficient but not greater than necessary to achieve the goals of sentencing.

*Nature of the Offense*

This Court is well aware that fentanyl is a deadly drug that has wreaked havoc in the United States, and more specifically in Massachusetts, over the past several years. Fentanyl remains the primary driver behind the ongoing opioid crisis, with fentanyl involved in more overdose deaths than any other illicit drug.[2] "Nearly 70 percent of all drug overdose deaths in the United States in 2018 involved an opioid. Deaths involving synthetic opioids other than methadone—the category which includes fentanyl—increased by 10 percent according to data provided by the Centers for Disease Control and Prevention (CDC)."[3] "Fentanyl use and overdose deaths are more widespread across the country as the opioid crisis continues. Overall, fentanyl-involved deaths are still the most concentrated in states in the Great Lakes and Northeast of the United States."[4]

Massachusetts has been one of the states hardest hit by the opioid crisis and was among the top five states with the most fentanyl reports in 2019.[5] These statistics are not hypothetical – they describe the opioid overdose crisis occurring right now in this district. The epidemic is real and being felt every day by families across Massachusetts and New England. The Defendant played a knowing and intentional role in fueling this epidemic, and there is no telling the damage the fentanyl distributed by this DTO caused before it was dismantled. He worked for a powerful DTO

---

[2] U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/documents/2021/03/02/2020-national-drug-threat-assessment#:~:text=The%202020%20National%20Drug%20Threat%20Assessment%20%28NDTA%29%20is,laundering%20of%20proceeds%20generated%20through%20illicit%20drug%20sales., at 7 (last visited November 13, 2022) (hereinafter "DEA 2020 Assessment").
[3] *Id.*
[4] *Id.* at 12.
[5] *Id.* at 8.

that was distributing truckloads of fentanyl and cocaine throughout the United States. The nature of this offense requires a significant sentence of imprisonment.

*Specific and General Deterrence*

A significant sentence of imprisonment is warranted to deter the defendant specifically and others from becoming involved in any way, role, or capacity in the trafficking of fentanyl as the dangers associated with this deadly and poisonous drug cannot be overstated. TORRES has numerous prior drug and/or firearm convictions dating back to 1998. Agents recovered two loaded firearms from TORRES's residence at the time of his arrest. Although TORRES's current interest in participating in substance abuse treatment is positive, he has proven that he is prone to recidivism.

If the Court awards the two-point minor role adjustment, the government's recommendation of 151 months' incarceration is at the low end of the GSR. If the minor role adjustment is not allowed, the government's recommendation is approximately 20% below the GSR of 188 to 235 months. Given the expansive scope of the DTO, the enormous quantities of fentanyl and cocaine it was distributing, the Defendant's role as a trusted and reliable utility player, and his prior criminal record, the downward variant sentence proposed by the defense does not adequately address the seriousness of the offenses of conviction.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   */s/ Leah B. Foley*
      Leah B. Foley
      Assistant United States Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                          */s/ Leah B. Foley*
                          Leah B. Foley
                          Assistant United States Attorney

Date: October 16, 2023